**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000116
06-AUG-2026
07:52 AM
Dkt. 68 SO**

NO. CAAP-24-0000116


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

HOʻOPONOPONO O MĀKENA, a domestic non-profit corporation, and
MAUI TOMORROW FOUNDATION, a non-profit corporation,
Plaintiffs/Appellants-Appellants,
v.
MAUI PLANNING COMMISSION; COUNTY OF MAUI, DEPARTMENT OF
PLANNING; and HONUAʻULA PARTNERS, LLC, a Delaware limited
liability company, Defendants/Appellees-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CCV-22-0000308)

**SUMMARY DISPOSITION ORDER**
(By: Wadsworth, Presiding Judge, Guidry and Gluck, JJ.)

Plaintiffs/Appellants-Appellants Hoʻoponopono O Mākena

and Maui Tomorrow Foundation, Inc. (collectively, **Appellants**)

appeal from the "Findings of Fact (**FOFs**), Conclusions of Law

(**COLs**), and Order on Constitutional Issues Raised by Appellant"

(**Order**), entered January 2, 2024, and "Final Judgment," entered

February 7, 2024, by the Circuit Court of the Second Circuit (**circuit court**).[1]

This is a secondary appeal. The circuit court's Order and Final Judgment affirmed Defendant/Appellee-Appellee Maui Planning Commission's (**MPC**) November 22, 2022 "[FOFs], [COLs] and Decision and Order" (**MPC Order**), which gave Phase II approval -- pursuant to Maui County Code (**MCC**) § 19.45.050(B) -- for the development of Defendant/Appellee-Appellee Honuaʻula Partners, LLC's (**HP**) Honuaʻula master planned residential community (the **Project**).[2]

Appellants raise four points of error (**POEs**) on appeal, contending that the circuit court erred in affirming the MPC Order because: (1) "the [P]roject did not comply with" Ordinance No. 3553; (2) "the [P]roject did not comply with" Conditions 6, 12, 18, and 20 of Ordinance Nos. 3554 and 4849;

---

[1] The Honorable Peter T. Cahill presided.

[2] The Project is part of a "project district" that is governed pursuant to MCC chapter 19.45. Project district developments are subject to a three-phase "[p]rocessing procedure." MCC § 19.45.050. In Phase I, the developer initiates a project district development by submitting an application to the Director of the Maui Department of Planning (**Planning Director**). MCC § 19.45.040(A). The Planning Director then submits "one or more proposed project district ordinances" to the MPC. MCC § 19.45.050(A). The MPC then holds public hearings on the proposed ordinances before submitting a recommendation and the proposed ordinances to the Maui County Council for final approval. Id. Here, the Project received Phase I approval through the adoption of Maui County Ordinance (**Ordinance**) Nos. 3553 and 3554.

In Phase II, the developer submits a "preliminary site plan" for the MPC's review and approval, and in Phase III, the developer submits a "final site plan" for the Planning Director's review and approval. MCC § 19.45.050(B), (C).

(3) the MPC operated "upon unlawful procedure and in exceedance of its authority under article I, §5 of the Hawai'i Constitution and [Hawaii Revised Statutes (**HRS**)] § 91-9(b) [(Supp. 2021)] by delegating authority to HP to determine its 'substantial compliance'" and "permitting HP to continually amend [the Project] throughout the proceedings so as to deprive Appellants of meaningful notice of the issues in the case[] and an opportunity to protect their property rights"; and (4) the MPC violated HRS chapter 343 by not requiring a supplemental environmental impact statement (**SEIS**) prior to Phase II approval.

We review secondary appeals de novo and apply the standards set forth in HRS § 91-14(g) (Supp. 2016)[3] to determine

---

[3]     HRS § 91-14(g) provides, in relevant part:

Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

    (1) In violation of constitutional or statutory provisions;

    (2) In excess of the statutory authority or jurisdiction of the agency;

    (3) Made upon unlawful procedure;

    (4) Affected by other error of law;

(continued . . .)

whether the circuit court's determinations were right or wrong. Flores v. Bd. of Land & Nat. Res., 143 Hawai'i 114, 120, 424 P.3d 469, 475 (2018). Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we address Appellants' POEs as follows:

(1) **POE 1 and POE 2 Regarding Conditions 12 and 18**: We first address HP's argument that Ordinance Nos. 5846 and 5847, which were adopted in August 2025 and amend Ordinance Nos. 3553, 3554, and 4849, partially moot Appellants' appeal. See State v. Hewitt, 153 Hawai'i 33, 41-42, 526 P.3d 558, 566-67 (2023) (holding that "mootness, like standing, is a prudential concern" that "is an issue of justiciability, not an issue of subject matter jurisdiction" (cleaned up)).

Appellants contend in POE 1 that the Project did not comply with Ordinance No. 3553, which they argue requires HP to provide 450 workforce housing units and a golf course. Appellants contend in POE 2 that, inter alia, the Project failed to comply with Conditions 12 and 18 of Ordinance Nos. 3554 and

---

[3](. . . continued)
      (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

      (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

4

4849, which set forth conditions pertaining to golf courses. Ordinance No. 5846 amended Ordinance No. 3553, and clarifies that the Project must provide a minimum of 288 workforce housing units. Ordinance Nos. 5846 and 5847 amend Ordinance Nos. 3553, 3554, and 4849 to delete language and requirements relating to golf courses.

Given the amendments, the matter of how many workforce housing units are required and/or whether the Project must include a golf course are no longer live controversies, such that there is no "adverse interest" for this court to address or "effective remedy" for this court to impose. See Lathrop v. Sakatani, 111 Hawai'i 307, 313, 141 P.3d 480, 486 (2006) (citations omitted). Moreover, we conclude that none of the exceptions to mootness -- i.e., capable of repetition yet evading review, collateral consequences, or public interest -- apply here.

We therefore decline to address POE 1, as well as the contentions in POE 2 that relate to the golf course.

(2) **POE 2 Regarding Condition 6**: We next turn to the merits of Appellants' remaining contention in POE 2, which is that the MPC exceeded its authority by approving HP's Phase II application because the application did not comply with Condition 6 of Ordinance No. 3554, which states,

5

> That a Drainage Master Plan and Phasing Plan of improvements shall be submitted for review and approval during Project District Phase II processing. Said plan shall include the recommended drainage improvements as represented in the Preliminary Drainage Report. The County may require periodic updates of the Drainage Master Plan and Phasing Plan.

Appellants contend that the MPC therefore erred in entering its FOF 221, which found HP "in compliance with Condition 6," and COL 17, which concluded that "[i]n light of [HP's] actions, the credible testimony of [Stacy] Otomo, and FOFs 191-221, [HP] satisfied Condition 6."

We review the MPC's FOFs and mixed questions of fact and law under the "clearly erroneous" standard. Irving v. Ocean House Builders, 136 Hawai'i 483, 485, 363 P.3d 331, 333 (App. 2015) (citation omitted); Panado v. Bd. of Trs., Emps.' Ret. Sys., 134 Hawai'i 1, 12-13, 332 P.3d 144, 155-56 (2014). "An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made." Morimoto v. Bd. of Land & Nat. Res., 107 Hawai'i 296, 302, 113 P.3d 172, 178 (2005) (citation omitted).

As part of its Phase II application, HP submitted a May 2017 "Preliminary Engineering Report," which included preliminary drainage plans for the Project. HP submitted updated drainage plans on March 14, 2022 and August 12, 2022.

Appellants contend that these updated drainage plans do not "include the recommended drainage improvements as represented in the Preliminary Drainage Report," and otherwise "lack analysis and essential details and were not subject to agency review and comment procedures."

On this record, we conclude that there was substantial evidence to support the MPC's finding that the Phase II application complied with Condition 6. HP retained Stacy Otomo (**Otomo**), a licensed civil engineer, to testify as an engineering expert at the contested case hearing on the Phase II application. Otomo testified that the drainage system planned for the Phase II application would provide adequate surface water management and substantially more drainage than what the county required. Otomo further testified that the updates to the drainage plan were made in response to MPC feedback. And Otomo testified moreover that, at the Phase II application stage, it is only necessary for HP to show a conceptual map; construction level mapping occurs during Phase III of the application process.

We therefore affirm the MPC's determination that HP's Phase II application satisfied Condition 6.

(3) **POE 3**: Appellants contend that the MPC committed various procedural violations during the approval process, and

that the circuit court erred in finding no error.  "Questions regarding procedural defects are reviewable to determine whether the decision was made upon unlawful procedure[.]"  Irving, 136 Hawaiʻi at 485, 363 P.3d at 333 (citations omitted).  "Review of a decision made by a court upon its review of an administrative decision is a secondary appeal.  The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision."  Tauese v. Dep't. of Lab. & Indus. Rels., 113 Hawaiʻi 1, 25, 147 P.3d 785, 809 (2006) (citation omitted).

We address Appellants' contentions as follows:

First, Appellants contend that HP's Phase II application violated MCC §§ 19.45.050 and 19.510.010 because it was not "complete" when submitted.[4]

---

[4]     MCC § 19.510.010(C)(1) states, in relevant part, "[w]ithin fifteen business days after receiving an application [for permit or approval], the [Planning Director] shall review the application and determine if the application is complete or incomplete," and that, "[i]f the application is incomplete, the [Planning Director] shall provide the applicant with a written statement that identifies the portions of the application that are incomplete."

MCC § 19.45.050(B)(1) provides that for Phase II applications, "the applicant shall submit . . . a preliminary site plan," which includes:

    a.  Proposals for drainage, streets, parking, utilities, grading, landscaping, architectural design concepts and guidelines, building elevations, building sections, construction phasing, open spaces, land uses, and signage;
    b.  Proposals for recreational and community facilities;
    c.  Proposals for floor area ratios, lot coverages, net buildable areas, open space ratios, impervious ratios, and density factors; and

(continued . . .)

Appellants contend that HP's submission of updated drainage plans in March and August 2022 demonstrates that the original Phase II application was incomplete at the time it was submitted. As discussed, supra, the updated drainage plans were submitted to address and respond to comments from the public and the MPC. As such, they were submitted in *response* to feedback on the original drainage plan. Appellants' contention lacks merit.[5]

Second, Appellants contend that the MPC erred in "unlawfully delegating" authority to HP. Appellants challenge Condition 7 in the MPC Order, which conditioned Phase II approval on the following:

> 7. That [HP] **shall develop the property in substantial compliance** with the conceptual site plan, phasing plan and roadway site layout plans dated January 13, 2022 and the Drainage Ma[s]ter Plan Depicting Preserved Sites, Features and Cultural Use Sites North of the NPPA dated August 12, 2022 (HP's Exhibit 53), and representations made to the [MPC] in obtaining the Project District Phase II Approval and shall submit to the Department a report addressing its compliance with the conditions established with the subject Project District Phase II Approval prior to issuance of Phase III approvals for each phase of the development. Failure to so develop the property may result in the revocation of the permit.

(Emphasis added.)

---

[4](. . . continued)
      d. Potential environmental, socioeconomic, and aesthetic impacts.

[5] Appellants' contention that HP's Phase II application was not "complete" because it did not include adequate workforce housing units and plans for a golf course are moot, as discussed in section (1), supra.

Appellants appear to interpret the above condition as requiring HP to "determin[e] substantial compliance of the application and site plan."  Contrary to Appellants' contention, however, the MPC was not "delegating" its authority but, rather, placing the onus on HP to comply with the MPC's conditions, and to demonstrate its compliance through the submission of a report "prior to issuance of Phase III approvals for each phase of the development."  Read in context, Condition 7 called for HP's "substantial compliance" with the plans submitted and representations made to the MPC during the contested case hearing.  Appellants' contention lacks merit.

Third, Appellants contend that they were denied due process because the MPC allowed HP to submit updated drainage plans in March and August 2022.  The thrust of their contention appears to be that, by permitting HP to submit updated drainage plans, MPC created "a high risk of depriving Appellants' ability to protect their constitutional rights due to the material limitations of time and resources to review and respond to [the] changes."

Appellants fail to demonstrate how HP's submission of its March and August 2022 updated drainage plans created "the risk of an erroneous deprivation" of Appellants' significant property interest.  See Sandy Beach Def. Fund v. City Council of

the City & Cnty. of Honolulu, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) (citations omitted). The final updated drainage plan was dated August 12, 2022, which was over a week prior to the final contested case hearing on August 23, 2022, and over a month before the MPC voted to approve the Phase II application after hearing further arguments from the parties. Moreover, at the contested case hearing, Appellants were permitted to conduct direct and cross examination of witnesses, make oral motions, and present their arguments. Appellants' contention lacks merit.

We conclude that the MPC did not commit the procedural errors alleged.

(4) **POE 4**: Appellants contend that the MPC exceeded its statutory authority by failing to require HP to prepare a SEIS because the Project "substantially changed" between the time the final environmental impact statement (**FEIS**) was submitted and approved in 2012 and the time HP submitted its operative Phase II application in 2018. Given these changes, Appellants argue the MPC exceeded its authority by approving the Phase II application without first requiring a SEIS to address these changes to the Project.

Hawai'i Administrative Rules § 11-200.1-30(a) (eff. 2018) states, in pertinent part, "no [SEIS] for [a] proposed

action shall be required, to the extent that the action has not changed substantively in size, scope, intensity, use, location, or timing, among other things." Appellants argued to the MPC that HP's substantive changes to the scope of the Project necessitated a SEIS. The MPC did not address or consider the Project's Phase II changes in determining that a SEIS was unnecessary; rather, the MPC determined that a SEIS was not warranted because the MCC does not expressly require a SEIS to be submitted as a condition for Phase II approval.

We conclude that the MPC erred in this regard, and we therefore vacate in part, with instructions that the MPC consider and determine on remand whether the Project's substantive changes "in size, scope, intensity, use, location, or timing" since the FEIS was approved in 2012, warrants the submission of a SEIS.

For the foregoing reasons, we affirm in part and vacate in part the circuit court's Order and Final Judgment, and

we remand to the MPC for further proceedings consistent with section (4), supra.

DATED: Honolulu, Hawaiʻi, August 6, 2026.

On the briefs:

Bianca Isaki, Ryan D. Hurley,
and Lance D. Collins,
for Plaintiffs/Appellants-
Appellants.

Mallory T. Martin,
for Defendant/Appellee-
Appellee.

Brian A. Bilberry,
for Defendants/Appellees-
Appellees.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Kimberly T. Guidry
Associate Judge

/s/ Daniel M. Gluck
Associate Judge